UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| PURNICE DORTCH, also known as CURTIS DORTCH, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) ) |
| QUALITY RESTAURANT CONCEPTS, LLC, doing business as APPLEBEES, | ) ) ) |
| Defendant. | ) ) |

Case No. 1:12-CV-198

Judge Curtis L. Collier

## **MEMORANDUM**

Before the Court is a motion to compel arbitration and stay the proceedings filed by Defendant Quality Restaurant Concepts, LLC, doing business as Applebees ("Defendant") (Court File No. 4). Plaintiff Purnice Dortch, also known as Curtis Dortch ("Plaintiff"), filed a response in opposition (Court File No. 9), and Defendant submitted a reply (Court File No. 13). Defendant also filed a supplemental memorandum (Court File No. 15). For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion to compel arbitration and stay the proceedings (Court File No. 4).

### I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to this motion are generally not in dispute. Plaintiff was hired as a crew member at Defendant's Applebees restaurant in McMinn County, Tennessee in May 2008 (Court File No. 1 ("Compl."), ¶ 5). He claims his work performance was acceptable under Defendant's guidelines (*id.* ¶ 6). Although he was paid $8.00 per hour, Plaintiff contends he was paid less than

similarly situated white employees who received $9.00 or more per hour (*id.* ¶ 7). He also claims he was not given a raise though similarly situated white employees received raises (*id.* ¶ 8). Plaintiff further alleges he was the subject of racial harassment (*id.* ¶¶ 9-10). He contends he reported the harassment to management and management even observed the instances of misconduct, but no remedial measures were taken (*id.* ¶¶ 11-13). Plaintiff was harassed until he resigned in December 2010 (*id.* ¶ 10).

Defendant maintained an Internal Dispute Resolution ("IDR") Policy (Court File No. 6 ("Moore Decl.") ¶ 4; Court File No. 6-1 ("Ex.")). The policy explains the process for formal management review of employment-related concerns (Moore Decl., Ex. A at 3). Before an employee can participate in arbitration, he must complete the IDR process (*id.* at 4). To initiate the IDR process, the employee must submit "a written statement of the concern within five working days after the informal discussion with [his] manager, but no later than 20 working days from the decision or action which gives rise to [his] concern" (*id.* at 2). If requested, a meeting or phone conference will be held within three working days of the concern being received (*id.*). The Regional Manager must then submit a written response to the problem within ten working days (*id.*). The employee can then appeal this response to the Director of Operations in writing within five working days (*id.*). At the same time, the employee may also request an in-person meeting or phone conference with the "Franchisee"(s) and Director of Human Resources (*id.*). According to the IDR Policy, "the Director of Human Resources with or without the Franchisee'(s) is the final step in the IDR process and is final and binding except that [the employee] may request arbitration, in accordance with the Employment Arbitration Policy, for those issues that are subject to such policy" (*id.* at 2-3).

The document containing the IDR Policy also explains Defendant's Employment Arbitration

2

Policy and the Arbitration Rules and Procedures. The Employment Arbitration Policy informs employees that, in the event the IDR process fails, arbitration will be conducted under the rules of the American Arbitration Association ("AAA") (Moore Decl., Ex. A at 3). The policy expressly provides that Title VII claims are subject to arbitration (*id.* at 4). The Arbitration Rules and Procedures further discuss aspects of the arbitration process, including but not limited to, initiating arbitration, appointing an arbitrator, conducting discovery, and expenses (*id.* at 5-11). At the time Plaintiff was hired, he signed an acknowledgment agreeing to the terms of the IDR Policy and Employment Arbitration Policy (Moore Decl., Ex. C at 79).

On June 19, 2012, Plaintiff filed suit against Defendant alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Compl. ¶ 14). He seeks compensatory and punitive damages as well as attorney's fees and costs.

## II. DISCUSSION

A motion to compel arbitration is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* Under the FAA, arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2010). Moreover, the provisions of the FAA are mandatory. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (emphasis in original) (citing 9 U.S.C. §§ 3-4).

If a party challenges the validity or enforceability of an arbitration agreement under § 2 of the FAA, the court must consider those issues before ordering compliance with the agreement. *See Rent-A-Center, West, Inc.*, 130 S.Ct. at 2778. A party may avoid arbitration if it can show the agreement itself is invalid or unenforceable. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 91 (2000). Moreover, to show the validity of the agreement is in question, the party opposing arbitration must show a genuine issue of material fact exists as to the agreement's validity. *Id.*

Here, neither party disputes Plaintiff consented to arbitration. Plaintiff signed an acknowledgment agreeing to the terms of the IDR Policy and Employment Arbitration Policy at the time of hiring (Moore Decl., Ex. C at 79). The IDR Policy and the Employment Arbitration Policy explain that the agreement binds Plaintiff and other employees to arbitration in the event the IDR process fails. Moreover, the documents describe the relevant arbitration policies and procedures. Plaintiff does not dispute the authenticity of any of these documents. Therefore, the Court will assume, for purposes of this motion, that the forms are authentic memorializations of the parties' agreement to arbitrate. *See Pennington v. Frisch's Rests., Inc.*, 147 F. App'x 463, 467 (6th Cir. 2005).

Plaintiff does, however, challenge the enforceability of the arbitration agreement because he contends two provisions are substantively unconscionable. Plaintiff avers the arbitration agreement impermissibly imposes preconditions and time limits that prevent him from asserting his rights. He also contends the arbitration agreement does not allow for adequate discovery. Whether an arbitration agreement can be enforced is generally determined after applying relevant state

contract law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995); *Great Earth Cos*, 288 F.3d at 889 (noting "state law governs 'generally applicable contract defenses [to an arbitration clause], such as fraud, duress, or unconscionability'").[1] Here, the Court must determine whether the terms of the arbitration agreement are unconscionable under Tennessee law.

"Unconscionability may arise from a lack of a meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably harsh (substantive unconscionability)." *Trinity Industries, Inc. v. McKinnon Bridge Co., Inc.*, 77 S.W.3d 159, 170 (Tenn. Ct. App. 2001) (citing *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445 (D.C. Cir. 1965)). In Tennessee, however, courts "have tended to lump the two together and speak of unconscionability resulting 'when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other.'" *Id.* at 171 (quoting *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984)); *see Skaan v. Fed. Exp. Corp.*, 2012 WL 6212891, at *9 (Tenn. Ct. App. Dec. 13, 2012). "In determining whether a contract is unconscionable, a court must consider all the facts and circumstances of a particular case." *Haun*, 690 S.W.2d at 872. "If the provisions are then viewed as so one-sided that the contracting party is denied any opportunity for a meaningful choice, the contract should be found unconscionable." *Id.* A court should also consider the contract's "setting, purpose, and effect."

---

[1] "If the agreement is not a contract of adhesion, the party seeking to avoid enforcement of the contract must prove unconscionability like any other defense of contract law." *Mitchell v. Kindred Healthcare Operating, Inc.*, 349 S.W.3d 492, 499 (Tenn. Ct. App. 2008) (citing *Diagnostic Ctr. v. Steven B. Stubblefield, M.D., P.C.*, 215 S.W.3d 843, 847 (Tenn. Ct. App. 2006)). Plaintiff does not suggest the employment agreement was an adhesion contract.

5

*Mitchell v. Kindred Healthcare Operating, Inc.*, 349 S.W.3d 492, 499 (Tenn. Ct. App. 2008) (quoting *Taylor v. Butler*, 142 S.W.3d 277, 285 (Tenn. 2004)).

Plaintiff argues the arbitration agreement imposes impermissible pre-conditions and discovery limits. For example, Plaintiff avers, under the IDR Policy, employees must submit a written statement within twenty days of the event causing the claim to trigger the process that leads to arbitration. Plaintiff also contends employees are required to navigate several layers of management review without counsel before they can take advantage of the arbitration process. Plaintiff contends the twenty-day time limit as well as the multiple steps of management review preceding arbitration make the arbitration agreement substantively unconscionable. Finally, Plaintiff argues the discovery limits are too restrictive.

    A.    **Preconditions**

        **1. Time Limits**

With respect to contractual time limits, in Tennessee, it is a "well-established general rule that in the absence of a prohibitory statute, a contract provision is valid which limits the time for bringing suit, if a *reasonable* period of time is provided." *Morgan v. Town of Tellico Plains*, E2001-02733-COA-R3CV, 2002 WL 31429084, at *4 (Tenn. Ct. App. Oct. 30, 2002) (emphasis added); *see Skaan v. Fed. Exp. Corp.*, W2011-01807-COA-R3CV, 2012 WL 6212891, at *9 (Tenn. Ct. App. Dec. 13, 2012) ("[I]t is well established that a contractual provision setting a time limitation for bringing a legal action arising out of that contract is not inherently unconscionable."). Courts applying Tennessee law have consistently upheld contractual time limits as reasonable, though those cases all notably involved limitations periods longer than the one at issue in this case. *See, e.g., Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 479 (6th Cir. 2005) (concluding a 180-day time

limit was not unreasonable or "manifestly unfair"); *Hardin v. Morningside of Jackson*, LLC, 425 F. Supp. 2d 898, 908 (W.D. Tenn. 2006) (noting that, while the ninety-day period to submit claims for arbitration "is brief, the court is aware of no authority . . . holding that ninety (90) days is *per se* 'unreasonable'"); *Skaan*, W2011-01807-COA-R3CV, 2012 WL 6212891, at *9 (upholding a 6-month contractual limitations period); *Morgan*, 2002 WL 31429084, at *5 (upholding a sixty-day limitations period in a construction contract). To date, no court has applied Tennessee law to address whether a twenty-day time limit in an arbitration agreement is "unreasonable."

Several courts in other jurisdictions, however, confronted with limitations periods of thirty days or less have concluded such provisions are unreasonable and unconscionable. For example, Plaintiff cites *Garrett v. Hooters-Toledo*, 295 F. Supp. 2d 774 (N.D. Ohio 2003), in which the district court determined, under Ohio law, that a ten-day limitations period was unreasonable. In *Garrett*, the alternative dispute resolution agreement required employees to file their claims against the employer within ten days of the event or events from which the claims arose. *Id.* at 781. The employees were required to submit a request for mediation of the claim within the ten-day time limit and then, within 180 days of initiating mediation, they had to request arbitration or else the claim for arbitration was forfeited. *Id.* at 782. The district court concluded the ten-day time limit was "unreasonable and unfair," and therefore substantively unconscionable. *Id.* In explaining its decision, the court noted

> Few, if any potential claimants would be able to assess their situation, with or without consulting an attorney, within such time period. As a practical matter, this ten day period would be too short to enable a terminated worker to locate and meet with an attorney. This extreme limitation has no apparent justification, and, even if defendants tried to justify this draconian term, the severely adverse impact on a claimant's ability meaningfully to assess and assert her rights would greatly outweigh such justification. The sole purpose—and, in any event, the clear effect—of this limitation is to eliminate the likelihood that discharged employees

7

will challenge their terminations, even if the ADR Agreement otherwise is reasonable and fair.

*Id.* In reaching this conclusion, the district court relied in part on a decision from the United States Court of Appeals for the Third Circuit, *Alexander v. Anthony Int'l, L.P.*, 341 F. 3d 256 (3d Cir. 2003).

In *Alexander*, the arbitration agreement required that an employee submit his or her claim to the general manager within thirty days of the event that served as the basis of the claim in order to pursue arbitration. The Third Circuit, applying Virgin Islands law, concluded a thirty-day time limit in an arbitration agreement was substantively unconscionable because it was "unreasonable and unduly favorable" to the employer. 341 F. 3d at 266; s*ee Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269 (3d Cir. 2004).

Another case this Court finds instructive is *McKinney v. Bonilla*, 07-CV-2373 WQH (CAB), 2010 WL 2817179 (S.D. Cal. July 16, 2010). In *McKinney*, a district court applying California law concluded a thirty-day deadline for employees to report disputes was substantively unconscionable. The policy required employees to submit a written dispute to the senior manager in writing no more than thirty days after learning of the problem or else their claim was forfeited. The court concluded this time period was unconscionable with respect to both continuing violations as well as discrete violations. Among other things, the court noted

> If an aggrieved employee is uncertain whether he has a claim, it may take the employee more than thirty days to retain counsel and determine whether an act by the employer violated the employee's statutory rights. If an employee has a general sense that he has been wronged but lacks the sophistication to determine what legal claims he should bring, even if he complies with the thirty-day deadline to file a dispute in writing, he may fail to bring the correct claims during this internal resolution period and waive his right to assert meritorious claims later in the proceedings after obtaining counsel.

8

*Id.* at *9.

None of these cases is binding on this Court. However, for reasons similar to those identified in *Garrett*, *Alexander*, and *McKinney*, the Court concludes the limitations period in this case is unreasonable after taking into account its setting, purpose, and effect. The contractual time limit requires Plaintiff to file his claim within five days of informally discussing the matter with his manager and no more than twenty days after the act or acts leading to his claim, or else he is essentially foreclosed from pursuing arbitration. This is particularly problematic in Plaintiff's case because he is alleging hostile work environment and harassment claims, claims for which the actual harm may not be realized until well after the events occurred.

As the courts in *Alexander* and *McKinney* observed, thirty days is often an insufficient amount of time for an employee to determine whether he has a cognizable claim that could eventually succeed in arbitration and to retain an attorney to assist in making such a determination. Moreover, as noted in *McKinney*, many unsophisticated lay persons may know to initiate the process but then fail to identify the correct legal claims. By identifying the wrong issues, it is possible that those employees may unknowingly end up waiving their ability to assert the appropriate claims in arbitration later. Here, Plaintiff has ten days less than the employees in *Alexander* and *McKinney* to make a decision of equal import.

Finally, in considering whether the provision here is unconscionable, the Court must take into account whether the provision is so one-sided to deprive Plaintiff of any meaningful choice. There is no dispute that Plaintiff voluntarily entered into the employment agreement and he does not claim he lacked understanding of its terms. At the same time, this particular provision severely limits Plaintiff's ability to utilize the arbitration process and substantially favors the interests of Defendant.

9

In its defense, Defendant notes the IDR policy has a clause that gives the company discretion to waive the twenty-day time limit for employees who may have arbitrable claims but failed to act within the applicable time limit ((Moore Decl., Ex. A at 11). The problem, however, is that sole discretion lies in the hands of Defendant and an employee would have no protection--at least as the policy presently stands--against an arbitrary denial of his request to waive the time limit.

Taken together, this Court is not stating that a twenty-day time limit is *per se* unreasonable because such determinations must be made after considering the setting, purpose, and effect of the time limitation. However, here, in light of the facts of this case, the twenty-day time limit in the arbitration agreement is unreasonable and unconscionable, to the extent Plaintiff's ability to participate in arbitration is premised on him acting within the requisite twenty-day time period.[2]

### 2. Internal Dispute Resolution Process

While the Court is deeply concerned about the time limits imposed in the arbitration agreement, which have the direct effect of severely limiting Plaintiff's ability to pursue arbitration, Plaintiff's concerns pertaining to the layers of internal review do not rise to the same level. An employee must participate in the IDR process before he can initiate arbitration. However, the purpose of the IDR process--as explained by Defendant and as explained in the policy itself--is to provide a faster and more cost-effective means by which to address employment-related concerns. As noted earlier, the employee is encouraged to first informally discuss the matter with his manager and subsequently complete a written statement of his claim. If requested, a meeting or phone conference will be held within three working days of the concern being received. The Regional

---

[2] The Court reviewed Defendant's supplemental memorandum and exhibits (Court File No. 15). Those courts, however, were not presented with the question before this Court.

Manager must then submit a written response to the problem within ten working days. The employee then has the option to appeal his decision within the company. If the employee is not satisfied with the outcome of the IDR process, he is then free to arbitrate his claims.

This process is not so burdensome and one-sided that the Court would consider it to be substantively unconscionable. Arguably, many disputes are resolved internally through the IDR process, without the employee or Defendant having to expend additional time and resources to arbitrate the claims. Moreover, as noted by Defendant, nothing prevents Plaintiff from retaining or seeking guidance from an attorney during the IDR process. Finally, in the event the process is unsuccessful, the employee may then pursue his claims through arbitration.

Plaintiff may believe the steps are unnecessary hurdles through which he must traverse before he can exercise his rights in an arbitral forum. However, the layers of review are not the problem in this case, only the twenty-day time limit for the reasons provided above. Accordingly, the Court will not conclude the IDR policy as a whole is unconscionable under Tennessee law.

### B. Discovery Limits

Plaintiff also contends the arbitration agreement does not provide for adequate discovery. He notes the arbitration agreement only allows for one set of interrogatories "which shall be limited to the identification of potential witnesses" and limits Plaintiff to only two eight-hour days of depositions. He also claims the agreement does not allow him to subpoena witnesses for the arbitration hearing. Although Plaintiff offers no Tennessee law in support of his claim, the Court does recognize the Federal Rules of Civil Procedure are more lenient with respect to discovery. For example, Fed. R. Civ. P. 26(b)(1) provides that a plaintiff is entitled to twenty-five interrogatories regarding "any nonprivileged matter that is relevant to any party's claim or defense." Moreover, Fed.

11

R. Civ. P. 30 provides for ten seven-hour depositions.

Both parties in this case cite *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991). In *Gilmer*, the Supreme Court, *inter alia*, briefly discusses whether the discovery limits in the New York Stock Exchange ("NYSE") rules of arbitration are inadequate. Concluding that the discovery limits still provided the plaintiff a fair opportunity to assert his statutory rights, the Court declared "[a]lthough those procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Id.* at 31. Moreover, the Supreme Court explained, "[i]ndeed, an important counterweight to the reduced discovery in NYSE arbitration is that the arbitrators are not bound by the rules of evidence." *Id.*

Here, the discovery limits in the arbitration agreement are more restrictive than what is allowed under the Federal Rules of Civil Procedure. However, the reduced discovery is balanced by the positive trade-offs inherent in the arbitration process as noted above in *Gilmer*. This Court is also not convinced Plaintiff would be unable to vindicate his statutory rights under the arbitration agreement rules. In the event the discovery limits prove to be too restrictive, Rule 7 of the American Arbitration Association's rules--on which this arbitration agreement is based--provides: "The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration" (Moore Decl., Ex. B at 36). *Cf. Wilks v. Pep Boys*, 241 F. Supp. 2d 860, 864-65 (M.D. Tenn. 2003) (concluding the agreement's discovery limit of one deposition was not unconscionable when AAA rule 7, as well as the arbitration agreement terms, provide for relief in the event the arbitrator concludes more

12

discovery is necessary). Thus, the limits on discovery do not make the arbitration agreement unenforceable.

## III. SEVERABILITY

The only provision in the arbitration agreement found to be unconscionable was the twenty-day contractual time limit. The arbitration agreement contains a severability clause that states the Court should remove any void or unenforceable provisions while still giving full effect to the rest of the agreement (Moore Decl., Ex. A at 10). Under Tennessee law, "[i]f a contract or term thereof is unconscionable at the time the contract is made, a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term." *Taylor v. Butler*, 142 S.W.3d 277, 285 (Tenn. 2004). Similar support is found under federal law. *See Morrison v. Circuit City Stores*, 317 F.3d 646, 677-78 (6th Cir. 2003) (holding that, with respect to a cost-splitting provision, both Tennessee contract law and federal precedent support severance of the provision from an arbitration agreement where "that provision was not interwoven with the rest of the agreement and may be deleted without affecting the rest of the agreement's provisions regarding arbitration"). Here, because the agreement contains a severability clause, Plaintiff agreed to the terms of the agreement, and the time-limit provision can be removed from the agreement without affecting the enforceability of the rest of the agreement, the Court will sever this particular condition from the agreement in this case. The rest of the agreement, however, is enforceable and Plaintiff's claims will proceed to arbitration.

## IV. STAY VERSUS DISMISSAL

Defendant requests that the case be dismissed or, in the alternative, stayed. Under the FAA, if a court determines a cause of action is covered by an arbitration agreement, it must stay the proceedings until the arbitration is completed. 9 U.S.C. § 3.[3] In keeping with the requirements of the FAA, the Court will stay the proceedings pending arbitration.

## V. CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion to compel arbitration and stay the proceedings (Court File No. 4). Specifically, the Court deems the arbitration agreement enforceable, with the exception of the twenty-day time limitation. The Court **ORDERS** that the time-limit provision be **SEVERED** from the agreement, to the extent Plaintiff's ability to participate in arbitration is premised on him acting within the requisite twenty-day time period. The Court will also **STAY** the proceedings pending arbitration.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

---

[3] Under some circumstances, this circuit has provided that courts can dismiss an action where all of the claims are arbitrable, *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).